Good morning. Carol Carbajal on behalf of the petitioner. I'm sorry I didn't hear ma'am. Carol Carbajal on behalf of the petitioner. Thank you. Well you could pull the microphones a little bit closer. Good. There are three main issues in the case and the first I'd like to address if I may is whether if petitioners appeal is premature it ripened upon entry of final order of removal. I would submit to you that it was not premature. There is a final order of removal. The INA section 242 and 8 U.S.C. section 1252 B1 says that a petition for review must be filed no later than 30 days after the final date of the final order removal. 8 U.S.C. section 1101 A4713 says that when the BIA affirms the order removal it comes final and that is exactly what happened in this case. But is there an order of removal here? It is. There's an order granting withholding, is there not? Yes, Your Honor, but withholding and an order of removal go hand in hand. Okay, but in Abbas's case, and I've always pronounced it wrong, Abbas Adalian, didn't we say that the order doesn't become final in similar circumstances where there's a remand to the IJ for a background check until the back, until the IJ issues that final order either granting or denying withholding? It does say that, Your Honor, but. And in that case, is that the law of the circuit? Well, Your Honor, I would submit that that creates a conflict. Abdisalan. However you pronounce it, we'll accept it. Admits, itself admits that creates a slight conflict with Riso and Pinto. But it may create a conflict, but it is the in-bank ruling of the circuit, so any conflicts are resolved in favor of the in-bank. So the way I read it, it says an appeal, the time to appeal is after the IJ enters the final order after remand. Assuming that's the case. Well, in that case, Your Honor, I would also point out that it's in conflict with statute and regulation. But we may have been wrong. I mean, but let's assume that that's a binding ruling of the circuit, that a three-judge panel can't change it. We may have goofed. Assuming that that's the law of the circuit, can you address the ripening question? I think we explicitly left open that question in Abdisalan. The ripening question. The ripening question. Right. So we don't, you don't have a holding against you on that. Right. So Abdisalan says it's premature, but it might ripen, we don't have to reach it. Other circuits have, we never have. Tell us why you, what your view is on ripening. If it was premature, then I would submit that it has ripened, because nothing changed on remand. Exactly what the BIA order happened with the IJ. But then when you say the IJ, when the IJ did what it was supposed to do, that order became final. In this case, Your Honor, I would say no, because the IJ entering order of withholding, he did not enter an order of removal. Thus, the final order of removal that was entered was by the BIA. So what if the BIA, see, we're still back to your original argument. What if the IJ, what if the background checks had come down bad, showed crimes in the history or something like that, and the IJ said, I'm therefore going to deny withholding. When, and you wanted to attack that ruling, when would you attack that? Wouldn't you have to wait until the IJ ruled in order to appeal that holding to the BIA? It could have been appealed at that time. See, it can't be final, it can't be final at two times. The ripening argument's different. The ripening argument is, because he completed the tasks, sort of analogizing this to the federal rules of appellate procedure, you may have appealed prematurely, but now we should take jurisdiction anyway. So I want to hear what you have to say about that. Under those circumstances, the final order would still be final, because withholding and an order of removal are independent of each other. Yeah, you see, you're making a different argument than the one I'm interested in, so let me try to make it clearer. Let's assume that you filed your notice of appeal prematurely, petition for review prematurely, because there was not yet a final order. But sometime after you filed your petition for review, a final order was entered by the IJ. Under those circumstances, should we treat your petition for review as timely? Yes, there was still a final order of removal issued by the BIA, whether the IJ grants or denies withholding. The final order removal stands. I mean, the ripening, let me, again, because we were interested in this, it may have been confusing to ask it. Ripening is this concept in the federal rules of appellate procedure, which says if you file a premature notice of appeal, but the order later becomes final after you file your notice of appeal. We treat it as if it were timely filed. So is there any, some circuits have made that kind of ruling with respect to these kinds of orders. Others have not. Why should, which rules should we adopt? If you find that the appeal was filed prematurely, then yes, I would say that it has ripened, because the order of the immigration judge had no effect on the order of the BIA. It would have ripened not because it has no effect, but because the order of the immigration judge became final after you filed your petition for review. In this case, the order of the IJ only grants withholding. We're missing each other, so go ahead and address the other issues that I think we asked about. Yes, Your Honor. The second issue is whether this court has jurisdiction to review the BIA's extraordinary circumstances determination. The answer is yes. Under Ramadan and Khusyov, those courts have already determined that this is a mixed question of fact and law, and therefore it has jurisdiction. If it has jurisdiction, then we move to whether the facts are undisputed. For this court to have jurisdiction, the underlying facts have to be undisputed. Again, under Ramadan and Khusyov, which are the date of arrival in the United States, the expiration of legal status, and the date of the application for asylum, the main facts, historical facts that have to be addressed, if those facts are undisputed, then there is jurisdiction for this court. But isn't it disputed whether or not your client's difficulties were the reason that the petition was not timely filed? That would be the application of law to the facts, but the actual facts are not disputed, even if you want to look beyond it. See, there was a hearing, and an I.J. said, I've heard all these facts, but I don't think your mental condition affected when you filed the petition. I think the reason you filed the petition late was you didn't know of the deadline. That's a factual finding. We can't review that factual finding, can we? No, Your Honor, but the facts here are undisputed because the respondent was found credible. All his supporting evidence was unrebutted, and he was granted withholding of removal based on the facts that are undisputed. And again, precedent in this court says that the historical facts are the ones that have to be undisputed, and those are the arrival in the U.S., the filing of the asylum application, and whether the petitioner had status and when that terminated. So those are undisputed facts. That's not an issue here. But isn't it disputed whether or not your client's mental condition was the reason that he filed late? No, Your Honor. I would say that... The government did not concede that, Your Honor. They contested it, and the I.J. made a factual finding that it wasn't the primary reason, I think, he said that he filed late. I would submit that those are legal arguments, not factual arguments, because the government and I are addressing the same exact facts. Isn't your argument really, or shouldn't your argument really be that the BIA used the wrong legal standard in determining whether the PTSD was directly related to the failure to file? Yes, Your Honor. I was planning on addressing that on the third issue. But as of now, I just wanted to point out that the facts are not disputed for this court to be able to have jurisdiction. Did you make the argument that Judge Wardlaw just raised in your briefs? As I read your briefs, your argument is that they weighed the evidence incorrectly. Did you make an argument in your briefs or below that the wrong legal standard was applied? Not quite that argument, Your Honor. The argument I made was that both the I.J. and the BIA ignored the overall evidence. Under a totality of circumstances, they only looked at certain facts and ignored other facts. If they had looked at all the circumstances of the case, then they would, in my opinion, have reached the conclusion that it was because of PTSD that the petitioner failed to file the application within the one-year deadline. So moving on to that third argument, the BIA seems to have applied a clear error standard, and that's a mistake. Again, based on Ramadan and Huzia, not sure how to pronounce it, they point to a different standard that they should have used. Either, and it's still not quite clear to me, either they should have used a substantial evidence standard, because when discussing the facts, or alternatively, Ramadan and Huzia have also just discussed a reasonable standard. They want to know that the extraordinary circumstances caused a reasonable delay in the filing of the asylum application. So in this case, the BIA just focused on the fact that the petitioner, during the testimony, said that he had no knowledge of asylum law and that he didn't speak English. But he actually testified a whole bunch of other things during that portion of the hearing. He testified that he was ashamed, that he was afraid, that he was very traumatized, and that's why he didn't discuss any of the facts of his past persecution with anyone that might have been able to provide assistance to him. The IJA and the BIA also ignored the psychological report. They acknowledged its existence, but they ignored the factual determination it made when the psychological report explicitly links the delay of the filing of the asylum application to his PTSD. The psychological report says that the petitioner has avoided discussing his trauma as a mechanism for survival and to be able to just live on a daily basis, and that's why he did not seek out any professional help, including medical help that might have helped his PTSD. I would also point out that the BIA and the IJA did not discuss the fact that when the petitioner was abused, he was persecuted, he was only 17 years old, and I think there has to be some deference given to petitioners when the trauma they experience happens when they're minors. In this case, the petitioner was also really traumatized that he's still having suicidal thoughts. Again, that's pointed out by the psychological report, and the BIA nor the IJA discussed any of those facts in determining that the petitioner did not meet the one-year deadline. Does the record indicate your client's current situation? Take it he was granted withholding. Yes, Your Honor. Okay, that's all. That was my question. Thank you. You may proceed. May it please the Court, Your Honors. There are two issues in this immigration case, the first being whether the Court generally lacks jurisdiction over this petition for review because the petitioner did not file a petition for review following 30 days of entry with final order of removal. The second issue is whether or not, assuming the Court has general jurisdiction over this petition for review, whether the Court nonetheless lacks jurisdiction to review the agency's untimely asylum finding. Starting with the first issue, it's the petitioner's burden to establish the Court's jurisdiction. This Court has stated in Ortiz-O'Farrow that the point at which a removal order becomes final is critical for determining when this 30-day window will close. Okay, so let's assume that the petition's premature. Yes. Should we adopt a ripening rule? No, and there's two reasons why the Court should not adopt a ripening rule. First, it's that Absalon, however you want to pronounce it, was very clear. For petitioners in these exact circumstances, it states and lays out when exactly the final order of removal occurs. So when the immigration judge granted withholding in this case and then 30 days elapses where no appeal is taken, then the order of removal is final, starting the 1252B1 window to file a petition for review. But we left open whether or not in cases not already pending, if you will, what we said was, look, for all the cases already pending, you're forgiven. That's correct, Absalon cites the Conn and other Third Circuit, Second Circuit, and Eleventh Circuit. I don't think they made their ruling yet, but the Second and Third had ripening rules, and Absalon left that open. So why shouldn't we have one? Whatever it was called, left open whether we should adopt one. Left open, but it made it very clear. So when you're looking at these ripening decisions in the Third and the Second, they engage in a very fact-specific analysis regarding whether or not the petitioner reasonably believed he was filing at the right time. And second, whether there was prejudice to the government. In the wake of Absalon, it's very hard for someone to argue they didn't know they were filing at the right time. So you're arguing what we did in that in-bank case was effectively say, look, we're now making the rule clear. And so everybody up until now was excused. From now on, follow the rule we've today announced. That's correct. What I hear the petitioner's counsel arguing is something that I hadn't thought of before. What she's arguing is that the order issued by the IJ upon remand from the BIA was not a final order of removal, because it granted relief. So she's saying that can't be the appealable order, because under a different statutory section, only final orders of removal. And so she's characterizing it to disfavor herself in a strange way. But I think we contemplated that after the IJ's final order, if there was a final action in a situation where there was mixed, that we would have jurisdiction over that. Yes. There's no question that's a final order of removal. The grant of withholding does not obviate a order of removal. Order of removal exists, but it's being withheld. It's not being executed under that particular type of protection, we call it. Sometimes it's a thing between a relief and protection. And so, for example, in this case, they want to pursue the case to get asylum, which is a form of relief leading to residency status. Because that can do away with an order of removal. So the order of removal remains, but the reasoning of Amsterdam, as I understand it, is that order of removal does not exist yet for PFR purposes, because things could happen upon remand that could reopen the order of removal. So it's still a final order of removal. Because notwithstanding a limited remand to the IJ, no one is prevented from presenting new evidence. Correct. Because things could come up, as Absalon clearly states. Background checks could, a new conviction could have arisen requiring further analysis of withholding of removal, for example. So when the court were to adopt ripening, it would just, I think, would render this kind of law less clear. I believe Absalon's purpose was to make this a very clear rule, and it is a very clear rule. Petitioner had notice of this decision. It's been on the books for a long time. The court likewise issued Petitioner an order in January 2017, kind of seemed to be hinting that you should file because of Absalon, and Petitioner still did not. The only thing is, I think we did leave open the question of ripening in Absalon. I think we expressly left it open. Yes, you did expressly leave it open. And that's why I was noting that in Kahn and Molina and other circuits that have adopted this ripening rule, which is the second and third and eleventh, they have talked about, especially Kahn, how they believe they are filing at the right time. So even, and it doesn't have a case like Absalon yet in those circuits. So Absalon kind of removes that part of the analysis saying that you know. You know when you should have filed, yet you're going to jump the gun because you're either disregarding our precedent or you just want to seek some advantage by filing early. What's the advantage by filing early? In this case, there's probably not much advantage, but there's other cases where, for example, someone has an order of removal, but it languishes for a decade. And then they're picked up by immigration authorities because some minor arrest and then they file a motion to reopen. And at that point, like a state of removal is not automatic for the board. And so then they could jump the gun and file in this court just to get the automatic stay. So while their motion to reopen is pending, they will knowingly file in this court just to obfuscate the workings of the government. In this case, you're not claiming any prejudice, are you? No. Can you address the second issue? Let me try to frame it for you. To the extent the facts are disputed, we lack jurisdiction to review the IJ's factual finding. But we do have jurisdiction to determine whether or not the correct legal standard was applied. Do you agree? Agreed. So the IJ talked in terms of his mental health not being the primary reason for the late filing. Isn't the standard different than that, the legal standard? Isn't the legal standard that if it was a substantial contributing cause to the late filing, then it might be an extraordinary circumstance? Well, in Gispar, Beholder, they discussed this regulation where it was implemented for the extraordinary circumstances exception. And one of the three circumstances it requires is that the extraordinary circumstances directly related to the reason for delay. And that's what the immigration judge is quoting. At some point, the immigration judge quotes the right language, to be sure. But then his finding says substantially, didn't substantially contribute or something, words along those lines. Do you think that's close enough, or is it a different standard? I would say that the government, the IJ, means the same thing. He specifically finds that, like Gispar, he notes there's three different reasons given, but he chooses to credit the one the petitioner gave in direct response to his testimony when asked specifically, what was the reason for a delay? And he said, my unawareness, I didn't know asylum existed at the time. And so IJ chose to credit that response over arguments of his counsel, stated at the end of the closing argument at the end of the hearing, stating that it was my client's PTSD. But what do we do with the BIA, which I believe that's a decision under review, that said, didn't quote the standard. The BIA said, we agree with the immigration judge's assessment that the respondent's post-traumatic stress disorder did not prevent him from applying for asylum. And that's a different standard from directly related. Related is more associational. Prevent is preclude, obstacle. There might be a difference there, but the immigration judge's decision is still on review. It's not being prevented from review by the court. You know, the board did not adopt and affirm pursuant to matter urbano. It just simply added reasonings of its own. So the immigration judge's reasoning is what it is affirming in this case and just adding its own language on top. So if they had substituted their reasoning for that of the IJ, we could only review the BIA's reasoning, correct? If they disagreed or said we expressly disagree with this portion of the IJ. Your view is that they may have misstated his reasoning while affirming it? Yes. I would like to note one more thing on the first issue. Besides just the policy arguments about chipping away at Absalom, I think there's also a line of cases that the courts and fields have not considered when looking at this ripening issue, which is Supreme Court cases starting with Bowles v. Knowles, where it distinguishes between timing provisions that are rooted in congressional statute and timing provisions that are rooted in court-created rules. Timing provisions rooted in congressional statute are not subject to equitable remedies. So, for example, when someone files late, the court has no problem concluding even one day late from filing PFR. There is no equitable remedy. So when they file before this window opens, there would likewise be no equitable remedy under this line of Supreme Court cases because we have a 30-day window set in congressional statute. Unless we read, in effect, the concept of the Federal Rules of Appellate Procedure into the statute. Well, Bowles v. Knowles is addressing a Federal Rule of Appellate Procedure. And that was the argument made in Bowles v. Knowles. It was Federal Rule of Appellate Procedure No. 4. Yeah, was that the one that you couldn't grant an extension? That's correct. And that was taken from a congressional statute. And that's when the court said, because it's taken from a congressional statute, we can't treat it as something subject to equitable remedies. And Kahn, the 11th Circuit, and the 2nd Circuit never grapple with this distinction. The 2nd Circuit is the worst offender where it just gives no reasoning whatsoever for why it's allowing ripening. And the 3rd Circuit cites their precedent from decades ago before Bowles v. Knowles, and the 11th Circuit does the same thing. So I think adopting a ripening rule, even without abdessalon, would require some kind of grappling with this line of Supreme Court cases about whether or not these kinds of time provisions are even subject to equitable remedies. Does the Court have any further questions? No. Thank you very much, Counsel. Did you have anything to add? Give one minute. You're well over, but I'll give it to you. I had one case where my client was granted withholding, and the auto removal was entered. He was removed to the country where he was granted withholding. So the government suffers no prejudice if you adopt a ripening rule, whereas petitioners stand to suffer great prejudice if you do not adopt the ripening rule, especially pro se petitioners. As to the government's argument that the BIA just affirmed the IJ's decision for Bourbano, I would argue that that's not the case. The BIA provided additional argument, and they did discuss additional facts that the IJ missed. So they provided their own analysis to the issue. All right. Thank you. Thank you, Counsel. Cabrera-Speed Bar is submitted.
judges: Wardlaw, Hurwitz, Bataillon